**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| RICHARD DASCHBACH and ELCINDA PERSON, <br><br> *Plaintiffs*, <br><br> v. <br><br> ADVANCED MARKETING & PROCESSING, INC. d/b/a PROTECT MY CAR, <br><br> *Defendant*. | Case No. 1:20-cv-706-JL <br><br> **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS COMPLAINT, OR, ALTERNATIVELY, TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

## PRELIMINARY STATEMENT

Plaintiffs, upon landing on the websites described in the Motion,[1] provided their identifying information and agreed to the Terms and Conditions, including the Arbitration Agreements contained within, which were conspicuously hyperlinked directly above the "Continue" and "Submit" buttons that Plaintiffs clicked.  Nonetheless, Plaintiffs oppose arbitration by arguing (1) the Arbitration Agreement was not assented to or sufficiently communicated to Plaintiffs to be enforceable; and (2) Plaintiffs supposedly never visited the sites.  These gateway issues of enforceability, however, must be decided by the arbitrator, based on the unchallenged delegation clauses within the Arbitration Agreements.  Should the Court not defer to the delegation clause, the sites amply provided Plaintiffs with notice sufficient to create binding Arbitration Agreements, to which Plaintiffs assented.  Plaintiffs have also failed to provide sufficient evidence to raise a genuine issue of material fact as to the formation of the Arbitration Agreements.  Even if they had, the FAA requires the Court to conduct a trial on whether binding Arbitration Agreements exist.  These identical issues were just resolved by the

---

[1] All capitalized terms herein have the same meaning as in PMC's Motion to Compel Arbitration and to Dismiss Complaint, or, Alternatively, to Dismiss the Complaint for Lack of Personal Jurisdiction (DE 12) (the "Motion").

Honorable Rodolfo A. Ruiz II from the Southern District of Florida in *Bell v. Royal Seas Cruises, Inc.*, No. 19-CIV-60752-RAR, 2020 WL 5639947 (S.D. Fla. Sep. 21, 2020). There, the same lawyers for Plaintiffs here made the identical arguments they make here. Judge Ruiz first found that the website's terms and conditions, including the Arbitration Agreement, were conspicuous and binding on any person that clicked "submit" and/or "continue". Then, based on the conclusory denial of the plaintiff to ever visiting the website, the Court, as required by the FAA, set the matter for a bench trial on the issue of whether Ms. Bell, or someone on her behalf, visited the website on the date in question.

Alternatively, should the Court decide that neither arbitration nor a trial is required, the Court should dismiss the Complaint because it lacks personal jurisdiction over Person. Plaintiffs argue that the Court has pendent jurisdiction over Person's claims because the court has specific personal jurisdiction over Daschbach's claims. However, pendent jurisdiction is a principle that allows the Court discretion to exercise jurisdiction over a plaintiff's other claims—not another plaintiff's claims that have no connection with the forum. Even were pendent jurisdiction potentially applicable, Plaintiffs' claims do not arise from a common nucleus of operative fact and, therefore, application of the pendent jurisdiction doctrine is improper.

## <u>MEMORANDUM OF LAW</u>

### I.  THE DELEGATION CLAUSE REQUIRES THAT THE ARBITRATOR DECIDE WHETHER VALID ARBITRATION AGREEMENTS EXIST.

Not only do the Arbitration Agreements contain a broad delegation clause, they specifically incorporate the AAA's Commercial Rules. Rule 7(a) provides that arbitrators "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence,* scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (emphasis added). In their Opposition (DE 14), Plaintiffs focus on whether a

valid agreement to arbitrate exists, an issue that should be decided by the arbitrator because Plaintiffs have not independently challenged the delegation clause.

If a litigant specifically challenges a delegation provision, then a court should determine the validity of the delegation provision prior to compelling arbitration. *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 72 (2010). But when the party fails to "challenge[ ] the delegation provision specifically," the reviewing court "must treat it as valid . . . , leaving any challenge to the validity [or existence] of the [arbitration agreement] as a whole for the arbitrator." *Id.* Plaintiffs do not challenge the validity of the delegation clause itself or even acknowledge PMC's arguments that the gateway issue of validity and enforceability must be determined by the arbitrator. Plaintiffs' challenge to the entire contract is not sufficient; they must specifically challenge the delegation clause within as invalid. *See Ely v. East Coast Restaurant and Night Clubs, LLC*, No. 20-cv-442-JD, 2020 WL 4605249, at *4 (D.N.H. Aug. 11, 2020); *Clough v. Brock Services, LLC*, No. 2:19-cv-00050-JAW, 2019 WL 3806372, at *7 (D. Me. Aug. 13, 2019). Accordingly, the question of enforceability belongs with the arbitrator.

## II. THE SITES' TERMS AND CONDITIONS WERE SUFFICIENT TO CREATE VALID, ENFORCEABLE ARBITRATION AGREEMENTS.

Plaintiffs argue that the fact that the Terms and Conditions were presented as hybridwrap makes them unenforceable. Opp., at 4-8. This is simply wrong because the design and content of the sites rendered the existence of the Terms and Conditions reasonably conspicuous such that Plaintiffs (or any user of the sites) were on inquiry notice of the Arbitration Agreements. When "determining whether these 'hybridwrap' terms should be enforced, the focal point of the inquiry is whether "a reasonably prudent offeree would know that the [terms and conditions] governed" the user's actions. *Nicosia v. Amazon.com, Inc.,* 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019); *see Lundbom v. Schwan's Home Service, Inc.*, No. 3:18-cv-02187-IM, 2020 WL 2736419, at *4 (D.

Ore. May 26, 2020) ("The terms in hybrid agreements will be given effect if an offeree has inquiry notice of the terms and assents to the terms through conduct, such as creating an account, that a reasonable person would understand to constitute consent.").

Here, the Terms and Conditions were conspicuously hyperlinked directly above the "Continue" and "Submit" buttons that Plaintiffs clicked. *See* Exs. A-B to Mot. at ¶ 8.  It was impossible for Plaintiffs to scroll to the button without seeing the language stating that they understand and agree to the hyperlinked Terms and Conditions, ***which include mandatory arbitration***.[2]  The Terms and Conditions were "so prominently featured . . . in the center of the screen, above the 'continue' button that the users clicked" that a reasonable user would have been on notice of their assent to the Terms and Conditions.  *Small Justice LLC v. Xcentric Ventures LLC,* 99 F. Supp. 3d 190, 197 (D. Mass. 2015), *amended,* No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), *aff'd,* 873 F.3d 313 (1st Cir. 2017).  If a user clicked on the hyperlinked Terms and Conditions, which a user must have seen in order to click the "Continue" or "Submit" button, the user would read that "[b]y accessing and using the [websites], you agree to and accept these Terms & Conditions . . . ."  *See* Ex. A to Exs. A-B to Mot. at 1.  Plaintiffs cannot credibly dispute that a reasonable user would understand the function of a hyperlink because "[a] reasonably prudent internet user . . . is conversant in the basic navigation tools required to effectively utilize a website."  *Small Justice LLC*, 99 F. Supp. 3d at 197.

Plaintiffs argue that *Berman v. Freedom Financial Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at **3-4 (N.D. Cal. Sept. 1, 2020), an out of circuit case applying California law, should control.  In so doing, Plaintiffs conveniently ignore the Southern District of Florida decision *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020

---

[2] Notably, too, the language presented above the "Continue" button for Person also included the prefatory clause "By clicking below, I agree . . . ."  Ex. A to Mot. at ¶8.

WL 5742189 (S.D. Fla. May 13, 2020) ("*Bell I*"), *report and recommendation adopted,* No. 19-CIV-60752-RAR, 2020 WL 5639947 (S.D. Fla. Sep. 21, 2020) ("*Bell II*"), **in which Plaintiffs' counsel served as counsel for Bell**, and where the court appropriately departed from the *Nguyen* decision, upon which the *Berman* decision is based.  The *Bell* court, dealing with a substantially similar presentation of a website's terms and conditions, found no genuine dispute of material fact as to whether a user clicking "continue" on the website assented to the terms and conditions:

> [T]he Website in this case has features that put a reasonable user on notice that he or she is assenting to the Terms and Conditions.  First, in terms of placement, the Website does not simply "tuck away" the Terms and Conditions in an obscure corner of the Website where a user is unlikely to encounter them. Rather, the statement regarding the Terms and Conditions is located directly above the Continue button that the user must click to proceed with using the Website. Thus, it is highly likely that the user would see the statement regarding the Terms and Conditions. On this factor, the Website provides at least as much notice as in *MetroPCS* [*Commc'ns, Inc. v. Porter*, 273 So. 3d 1025 (Fla. 3d DCA 2018)], where the link to terms and conditions was placed at the end of a short text message to the user.
>
> Second, rather than simply having a link that informs the user that Terms and Conditions merely exist, the short sentence regarding the applicability of terms and conditions specifically starts off by stating "I understand and agree." Thus, as *Nguyen* suggests, there is an explicit textual notice that continued use will act as a manifestation of an intent to be bound. A reasonable user confronting a sentence "I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy" would understand that he or she is assenting to the linked terms and, significantly, that those terms "include[ ] mandatory arbitration."
>
> Finally, although the user is not required to check an acknowledgement box to accept the Terms and Conditions, he or she must take the affirmative act of clicking the Continue button directly below the relevant statement. In *MetroPCS,* however, the user was not required to click anything. There, the only affirmative action that the user needed to take was to pay his or her bill and continue using his or her cell phone service. The statement here does not explicitly indicate that clicking Continue is the affirmative act by which the user would manifest her acknowledgement of the "I understand and agree" statement.  But its placement directly over the Continue button, combined with the fact that clicking "Continue" demonstrates a clearly manifested intent to continue using the Website, would strongly imply to a reasonable user a connection between the "I understand and agree" statement and clicking Continue. Again, the connection between continued

use of the site (by clicking a button that literally says "Continue") and assent to the Terms and Conditions hyperlinked directly above the Continue button is at least as clear, if not clearer, than the connection between continued use of the cell phone service and assent to the terms and conditions in *MetroPCS*.

*Bell I*, 2020 WL 5742189, at \*\*6-7. The district court affirmed and adopted the report and recommendation, also upholding the validity of the arbitration agreement, adding:

> The sentence regarding the applicability of the Terms and Conditions, which includes a hyperlink to the Terms and Conditions and is placed directly above the "Continue" button that any user must click to proceed with using the website, reads: "I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy." Because it is nearly impossible that any user would not see that statement before hitting "Continue," this design is a far cry far from those wherein "the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them[,]" which have been repeatedly deemed to provide insufficient notice under Florida law. *Vitacost.com, Inc.*, 210 So. 3d at 765.
>
> \*\*\*
>
> The Court therefore concludes that the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice of the Terms and Conditions, and clicking "Continue" directly below the relevant statement is sufficient to constitute assent to the Terms and Conditions. Consequently, there is no genuine dispute of material fact as to whether the person who clicked "Continue" on the Website assented to the Terms and Conditions, which included mandatory arbitration.

*Bell II*, 2020 WL 5639947, at \*6.

For the same reasons discussed in *Bell I* and *Bell II*, Plaintiffs were given sufficient notice and assented to the Arbitration Agreements presented on their respective websites. The placement of the hyperlinked Terms and Conditions along with the words stating "I understand and agree" to the Terms and Conditions, ***which include mandatory arbitration***, directly above the "Continue" and "Submit" buttons sufficiently placed a reasonably prudent consumer on inquiry notice of the terms they agreed to. *See, e.g.*, *Hilton v. Fluent, LLC,* 297 F. Supp. 3d 1337, 1342 (S.D. Fla. 2018) (denying plaintiffs' claim that they should not be bound by the

Arbitration Agreement because they did not see or read the Terms and Conditions on the websites before clicking the "Submit" button); *Small Justice LLC,* 99 F. Supp. 3d at 197 (users placed on inquiry notice of terms by prominent placement in center of screen and links conspicuously visible); *Crawford v. Beachbody, LLC,* No. 14cv1583–GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (hybridwrap enforced because the link to terms contained warning they are binding was conspicuously placed above an "order" button.).

Moreover, even under *Berman* and *Nguyen*, Person cannot argue that the site associated with him "[did] not include a specific affirmative means of indicating consent to the Terms & Conditions or arbitration clause." *Berman*, 2020 WL 5210912, at *3. Although both Plaintiffs were given proper notice of the Arbitration Agreement and assented to its terms, the message presented to Person specifically stated, "By clicking below, I agree to . . . the Terms & Conditions, including a mandatory arbitration provision." Ex. A to Mot., at ¶8. Therefore, Person, even more so than Daschbach, was on notice that by clicking "Continue," he would assent to the Arbitration Agreement contained within. *See Nicosia*, 384 F. Supp. 3d at 266 ("Courts will give effect to hybridwrap terms where the button required to perform the action manifesting assent . . . is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms.").

## III. PLAINTIFFS' HAVE NOT SHOWN A GENUINE DISPUTE OF MATERIAL FACT AS TO THE FORMATION OF THE ARBITRATION AGREEMENTS.

Plaintiffs' denials that they ever visited the subject websites, without more, are insufficient to create a genuine issue of material fact as to the making or formation of the Arbitration Agreements. As discussed in the Motion, and further supported in this Reply, PMC has established all the required elements for the Court to order Plaintiffs' claims to arbitration. When ruling on whether there is a valid, enforceable arbitration agreement, courts routinely rely

on affidavits and declarations containing screenshots and descriptions of how the customer manifested assent, such as those submitted by PMC with its Motion.  *See Worthington v. JetSmarter, Inc.*, No. 18-Civ-12113 (KPF), 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019).

Nevertheless, Plaintiffs argue that the Court must deny PMC's Motion because they have filed declarations in which they have conclusorily denied visiting the subject websites.  Opp., at 8-11.  Plaintiffs cite to cases where similar affidavits were used to put an agreement to arbitrate in issue, but gloss over the differences in the cases.  For example, in *Berman v. Freedom Fin. Network, LLC*, plaintiff's denials were supported by the fact that the "name, email address, mailing address, [and] birthdate associated with the individual who registered [plaintiff's] phone number" did not match plaintiff's personal information. No. 18-CV-01060-DMR, 2018 WL 2865561, at *4 (N.D. Cal. June 11, 2018).  Here, *Plaintiffs admit that all of the personal information contained in their opt-in records is accurate* (Opp., at 10), so they simply deny entering the accurate information.  Refusing to provide internet browsing histories or IP addresses, both of which are easily accessible, they rest on unsupported denials, which are insufficient to create a genuine issue of material fact as to whether valid arbitration agreements exist.  *Sultanem v. Bright House Networks, LLC*, No. 8:12-cv-1739-T-24TBM, 2012 WL 4711963, at *2 (M.D. Fla. Oct. 3, 2012) (finding the denial in the plaintiff's declaration opposing a motion to compel arbitration insufficient; stating, "[h]e must also provide some proof to substantiate his denial, which he has not done."); *see Leslie v. First Premier Bank*, No. 1:17-cv-02554-ELR-RGV, 2017 WL 8186854, at *6 (N.D. Ga. Oct. 13, 2017); *Chime Institute v. Haney*, No. 2:13-cv-05762-SVW-RZx, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013).

Even if the Court disagrees, the result would not be to deny PMC's Motion. Instead, if the Court finds that Plaintiff has raised a genuine dispute as to any material fact concerning the

8

formation of the Arbitration Agreement, then, pursuant to 9 U.S.C. § 4, a ruling on PMC's Motion should be deferred and a bench trial should be held to determine the existence of a binding arbitration agreement. *Soto v. State Industrial Products, Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011); *Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 14-15 (1st Cir. 2006); *see Bell I*, 2020 WL 5742189, at \*\*8-9; *Bell II*, 2020 WL 5639947, at \*7.

## IV. THE COURT CANNOT EXERCISE PENDENT JURISDICTION OVER PLAINTIFF PERSON'S CLAIMS.

Plaintiffs concede that the Court does not have general personal jurisdiction over PMC (Opp., at 13) but argue that this Court has pendent personal jurisdiction over Person's TCPA claims because they arise out of the same nucleus of operative fact as Daschbach's claims. Opp., at 13-14. However, the pendent jurisdiction doctrine does not permit personal jurisdiction over a named plaintiff's claim that is outside a court's personal jurisdiction because ***another*** named plaintiff's claim is within the court's personal jurisdiction. The doctrine may place within a court's personal jurisdiction claims asserted by a plaintiff when ***that same plaintiff's*** federal claim is within the Court's jurisdiction but "arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180–81 (9th Cir. 2004). As multiple courts have found, the doctrine "applies to causes of action brought by a single plaintiff, not to claims raised by additional plaintiffs over whom the forum court would not otherwise have personal jurisdiction." *Densmore v. Colby-Sawyer Coll.*, No. 2:15-CV-346-JDL, 2016 WL 9405316, at \*5 (D. Me. Mar. 1, 2016); *see also In re FCA US LLC Monostable Elec. Gearshift Litig*., No. 16-MD-02744, 2017 WL 11552971, at \*4 (E.D. Mich. Apr. 19, 2017); *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, No. CV148390DMGPLAX, 2016 WL 7177532, at \*2 (C.D. Cal. May 26, 2016).

Even if the pendent jurisdiction doctrine *did* apply, Plaintiffs argue that Person's claims arise out of a common nucleus of fact with Daschbach's claims but do not identify any common nucleus. That determination is made using a "transaction test," and "[w]hether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026–27 (9th Cir. 2019). "In contrast, if the harms arose from different facts," then the two claims do not arise out of a common nucleus of facts. *Id.* at 1027. Thus, if "claims include different parties and different facts, [they] do not share the same common nucleus of operative facts." *Shamsai-Nejad v. Clark Cty. Sch. Dist.*, No. 2:12-CV-00308-RCJ, 2012 WL 4761937, at *3 (D. Nev. Aug. 6, 2012).

That is the case here. Unlike in *D'Jamoos*, where the court exercised pendent jurisdiction over plaintiffs' claims based on their shared nucleus of operative fact with claims over which the Court had specific personal jurisdiction, here "each of the Plaintiffs engaged in separate and distinct transactions with Defendant[ ]." *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, No. 17-CV-04992-BLF, 2019 WL 4888693, at *23 (N.D. Cal. Oct. 3, 2019). Though Plaintiffs plead similar causes of action, Daschbach's claims are based on alleged autodialed *calls* he received in New Hampshire (Complaint, at ¶¶1, 17) and Person's claims are based on separate, alleged *texts* he received in Georgia, outside the forum (*Id.* at ¶¶2, 25); their claims concern different communications and locations, based on visits to different websites, and, therefore, different operative facts. *Hawkins*, 2020 WL 4287447, at *5 (finding no pendent jurisdiction over out-of-state plaintiffs' TCPA claims against same defendant). Accordingly, should the Court find that arbitration is not appropriate, the Complaint must be dismissed.[3]

---

[3] PMC maintains that this Court lacks personal jurisdiction over all nonresident class members, as discussed more fully in its Motion, but finds that no further points need be made in reply.

Dated:  October 13, 2020               /s/ Steven J. Dutton
                                     Steven J. Dutton (NH Bar. No.: 17101)
                                     **MCLANE MIDDLETON P.A.**
                                     900 Elm Street
                                     Manchester, NH 03101
                                     Telephone: (603) 628-1379
                                     Email: steven.dutton@mclane.com

                                     Jeffrey A. Backman (Florida Bar No.: 662501)*
                                     **GREENSPOON MARDER LLP**
                                     200 East Broward Boulevard, Suite 1800
                                     Fort Lauderdale, Florida 33301
                                     Telephone: 954.491.1120
                                     Facsimile: 954.343.6958
                                     Email: jeffrey.backman@gmlaw.com
                                     *Attorneys for Defendant, Advanced Marketing & Processing, Inc.*

                                     *Admitted pro hac vice

### CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on October 13, 2020, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                      By:    /s/ Steven J. Dutton
                                           Steven J. Dutton