UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| RICHARD DASCHBACH and ELCINDA PERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED MARKETING & PROCESSING, INC. d/b/a PROTECT MY CAR, a Florida corporation,<br><br>Defendant. | Case No. 1:20-cv-00706-JL<br><br>**CLASS ACTION**<br><br>**JURY DEMANDED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

**I.     INTRODUCTION**

Seeking to dodge its liability under the Telephone Consumer Protection Act, 42 U.S.C. § 227, *seq*., for placing unlawful calls and text messages, Defendant Advanced Marketing & Processing, Inc. d/b/a Protect My Car ("PMC" or "Defendant") moves to dismiss Plaintiffs' Complaint advancing the defense *du jour*: seizing on a spate of lower court decisions issued in the wake of *Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335, 2343, 207 L. Ed. 2d 784 (2020), PMC asserts that *AAPC* somehow rendered the entirety of the TCPA unconstitutional from the time an exception for government debt collectors was added in 2015 ("2015 Amendment") through the date of judgment in *AAPC* on remand—thus supposedly depriving this Court of subject matter jurisdiction over Plaintiffs' claims.

PMC's reasoning falls apart. Defendant's argument ignores both the Supreme Court's analysis of severability within the *AAPC* decision itself as well as long-standing law that holds unconstitutional amendments are legal nullities. Indeed, in *AAPC* a majority of the Supreme

1

Court concurred that the government-debt exception—an unconstitutional amendment made decades after the TCPA was enacted—did not otherwise invalidate the TCPA's broader prohibition on robocalls.

THP's conduct has been plainly and constitutionally proscribed for almost thirty years. It is perhaps due to the clarity of Defendant's violations that THP urges the Court to follow *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), and *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), two District Court decisions that read *AAPC* as having negated the entirety of the TCPA for the past five years. This Court should not join them. *Creasy* and *Lindenbaum*[1] ignore centuries-old Supreme Court precedent, cited favorably in *AAPC*, that holds unconstitutional amendments are a nullity and are "powerless to work any change" to existing statutes. *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526–527 (1929). Defendant's insistence that the Court follow *Creasy* and *Lindenbaum* is in fact a push for the Court to impermissibly adopt the reasoning of the dissent over the portion of the *AAPC* opinion agreed to by a majority of the Supreme Court.

PMC's approach, as endorsed by *Creasy* and *Lindenbaum*, seeks to override Congressional intent and long-standing precedent in order to shield itself and countless other telemarketers from liability for five years of unlawful behavior—a remedy explicitly rejected in *AAPC*. Defendant's argument is not supported by "settled and bedrock principles of law." (Dkt. 19-1 at 1–2.) Rather, it can only be made by ignoring the holdings of *Frost* and *Eberle v. People of State of Michigan*, 232 U.S. 700 (1914), and misapplying *Marbury v. Madison*, cases that

---

[1] As an update, a third case has adopted *Creasy* and *Lindenbaum*. *See Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, Case No. 5:20-cv-00038-JSM-PRL, dkt. 74 (M.D. Fla. Dec. 11, 2020). On the same day, and as explained below, the Middle District of Florida also rejected *Creasy* and *Lindenbaum* in *Abramson v. Fed. Ins. Co.*, Case No. 8:19-cv-02523-TPB-AAS, dkt. 93 (M.D. Fla. Dec. 11, 2020). Ex. A at 3–4.

Justice Kavanaugh explicitly cited in the portion of the *AAPC* opinion endorsed by six other justices. In short, and as explained further below, *Creasy* and *Lindenbaum* were incorrectly decided, and the Court should deny Defendant's Motion to Dismiss.

## II.    BACKGROUND

Because PMC's argument for dismissal rests entirely on the assertion that the TCPA is unconstitutional, a brief review of the Act and the *AAPC* decision is helpful.

Congress passed the TCPA in 1991 to address "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71, 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289, 203 L. Ed. 2d 300 (2019) (explaining that "[t]elemarketing sales had 'skyrocketed to over $435 million in 1990,' which was a 'fourfold increase since 1984.'") (citing 137 Cong. Rec. S16,971 (daily ed. June 27, 1991) (statement of Rep. Pressler)).

Despite the law's enactment and steady enforcement over the past several decades, incessant telemarketing continues to this day. As explained by the Court in *AAPC*, "[t]he Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back…[t]he Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." 140 S. Ct. at 2343.

In 2015, Congress amended the TCPA to "allow robocalls that are made to collect debts owed to or guaranteed by the Federal Government, including robocalls made to collect many student loan and mortgage debts." *Id.* In response, TCPA defendants began mounting legal

3

challenges, claiming that the 2015 Amendment violated the First Amendment to the Constitution by favoring certain speech. For a remedy, they asked these courts to declare the entire Act unconstitutional. Several courts agreed in part that the government debt collection violated the First Amendment, but these courts also found that the 2015 government-debt exemption was severable in light of the TCPA's severability clause and otherwise did not negate liability under the otherwise valid robocall prohibitions while the amendment was supposedly in effect. *See, e.g.*, *Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) ("Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision, the Court finds the government-debt exception is severable. Other courts have found the same.") (citing *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 268 (D. Del. 2019) ("There is no evidence that Congress would not have enacted the TCPA without the exception for government debt."); *Wilson v. PH Phase One Operations L.P.*, No. CV DKC 18-3285, 2019 WL 4735483 (D. Md. Sept. 27, 2019); *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 4645524 (D. Mass. Sept. 24, 2019)).

The issue of constitutionality reached the Supreme Court in *AAPC*. The question produced a fractured plurality opinion, but ultimately six Justices agreed that the exception was a content-based rule that "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S. Ct. at 2343.[2] "Having concluded that the 2015 government-debt exception created an unconstitutional exception to the 1991

---

[2] Five Justices concurred that the exemption failed strict scrutiny. *See AAPC*, 140 S. Ct. at 2347. Justice Sotomayor reasoned that intermediate scrutiny should apply, but she concluded that the exception would likewise fail that standard. *See id.* at 2356–57 (Sotomayor, J., concurring).

4

robocall restriction," the *AAPC* Court's analysis turned to "whether to invalidate the entire 1991 robocall restriction, or instead to invalidate and sever the 2015 government-debt exception." *Id.* at 2348. Expressly rejecting AAPC's bid to raze the entire robocall restriction in its entirety, seven Justices agreed that severance of the offending provision was appropriate. *Id.* at 2343. Justice Kavanaugh explained that "the text of the Communications Act's severability clause requires that the Court sever the 2015 government-debt exception from the remainder of the statute." *Id.* at 2353–54. But even without a textual call for severance, the Supreme Court has a "strong presumption of severability" that has been "firmly established since *Marbury v. Madison*," such that one unconstitutional section of a statute could be invalidated while the remaining statute may be given full effect. *Id.* at 2350–51.

As to the effect of the amendment on enforceability of the remaining statute, Justice Kavanaugh pointed out that "the remainder of the law is capable of functioning independently and thus would be fully operative." *Id.* at 2353. Because "equal-treatment cases can sometimes pose complicated severability questions," Justice Kavanaugh's opinion further considered the appropriate remedy, namely whether to "extend benefits or burdens, rather than nullifying the benefits or burdens." *Id.* at 2354. Observing that "[t]he government debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems," Justice Kavanaugh concluded his severability analysis with the following holding:

> [A]s we have explained, severing the 2015 government-debt exception cures the unequal treatment and constitutes the proper result under the Court's traditional severability principles. ***In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction***.

*Id.* at 2355 (emphasis added). In a footnote to this holding, Justice Kavanaugh reasoned that, while no one should be held liable for making government-debt calls during the five-year period of the exemption's effect, the Supreme Court's decision "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355, n. 12.

It is this footnote that has led courts like those in *Creasy* and *Lindenbaum* to abandon the principle that unconstitutional amendments are legal nullities and to otherwise contravene Congressional intent. As explained below, this Court should refuse to join them.

### III.    ARGUMENT

Defendant fails to accord sufficient weight to Justice Kavanaugh's severability analysis, and the reliance on *Frost*, *Eberle*, and *Marbury v. Madison*, that informed the plurality's ruling that the robocall prohibition remained in effect. PMC instead encourages the Court to fall in line with *Creasy* and *Lindenbaum*—two district court cases that failed to recognize the precedent set forth in *AAPC*. On the contrary, the Court should refuse to maneuver around established law, and PMC's motion to dismiss should be denied.

### A.    As Established By Centuries-Old Supreme Court Precedent, Cited Favorably In *AAPC*, Unconstitutional Amendments Are A Nullity And Therefore Powerless To Infect Existing, Constitutional Statutes.

At the heart of PMC's motion is the mistaken belief that, because the Supreme Court determined in *AAPC* that the government-debt exemption was unconstitutional, the entirety of the TCPA's autodialer ban was supposedly rendered unconstitutional and federal courts are therefore without jurisdiction to hear any such claims that arose during the last five years. (*See* Dkt. 19-1 at 3–5.) PMC posits that severance "was prospective only" and suggests that maintaining liability for defendants who violated the remainder of the law (as it has stood for more almost thirty years) "does not square with the constitutional jurisprudence developed over

6

two hundred years." (*Id.* at 4, 9.) In fact, the jurisprudence identified by Justice Kavanuagh—curiously absent from PMC's brief—makes clear that an unconstitutional amendment has no effect on a constitutional statute.

When analyzing the effect of severance on enforceability of the remaining statute, Justice Kavanaugh reasoned that "the remainder of the law is capable of functioning independently and thus would be fully operative"—indeed, it was fully operative for more than twenty years before the government-debt exemption was added. *AAPC*, 140 S. Ct. at 2353. Notwithstanding the infirmity of the government-debt exception, the remainder of the TCPA is fully enforceable:

> The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law. In those cases, the Court has treated the original, pre-amendment statute as the "valid expression of the legislative intent." *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526–527, 49 S.Ct. 235, 73 L.Ed. 483 (1929). The Court has severed the "exception introduced by amendment," so that "the original law stands without the amendatory exception." *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S. Ct. 124, 66 L. Ed. 254 (1921).
> . . .
> Echoing *Marbury*, the Court in *Frost* explained that **an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that reason has no effect on the original statute**. 278 U.S., at 526–527, 49 S. Ct. 235.

*Id.* (emphasis added). Put simply, unconstitutional amendments have <u>no</u> impact on the original statute. As the Supreme Court explained in *Frost*:

> Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the Legislature which enacted it. Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent.

*Frost*, 278 U.S. 515, 526–27 (explaining further that "no law can be changed or repealed by a subsequent act which is void because unconstitutional. An act which violates the Constitution

7

has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality.") (citing *In Carr, Auditor, v. State ex rel. Coetlosquet*, 127 Ind. 204, 215, 26 N. E. 778, 781 (11 L. R. A. 370, 22 Am. St. Rep. 624)); *see also Eberle v. People of State of Michigan*, 232 U.S. 700, 705, 34 S. Ct. 464, 465, 58 L. Ed. 803 (1914) ("[I]n the case at bar the original local option law of 1889 had been held to be constitutional as a whole, and its validity could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities."); *Truax*, 257 U.S. at 342 ("The exception introduced by amendment to paragraph 1456 proving invalid, the original law stands without the amendatory exception.").[3]

PMC's motion makes no mention of *Frost*, *Eberle*, or *Truax*, nor of *AAPC*'s favorable treatment of these cases. PMC has no persuasive answer to this authority because it plainly holds that an unconstitutional amendment, like the TCPA's government debt-collection provision added to the statute in 2015, "is an empty legislative declaration without force or vitality." *Frost*, 278 U.S. at 527. Instead, PMC leans into cases like *Grayned*, wherein a state legislature amended to remove unconstitutional language from a previously-enacted statute. (Dkt. 19-1 at 6) (citing *Grayned v. City of Rockford*, 408 U.S. 104 (1972)). If the comparison were appropriate, PMC's position might carry more weight.[4] However, the posture of *AAPC* is critically distinguishable—this was not a case of an unconstitutional law later remedied by amendment,

---

[3] These authorities adhere to the Supreme Court's general approach to severability, emphasizing judicial modesty. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508, 130 S. Ct. 3138, 3161, 177 L. Ed. 2d 706 (2010) (explaining that "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem," severing any "problematic portions while leaving the remainder intact.") (citing *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 328–329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006)).

[4] *See, e.g.*, *Frost*, 278 U.S. at 525 (explaining that "If section 3714 as originally passed had contained the proviso, the effect would be to render the entire section invalid…. But the proviso here in question was not in the original section. It was added by way of amendment many years after the original section was enacted.").

but of a law that was constitutional for *more than twenty years* to which a subsequent body of Congress appended an unconstitutional amendment. *See AAPC*, 140 S. Ct. at 2352–53. As such, the 2015 amendment was "powerless to work any change in the existing [TCPA, and] that statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. 515, 526–27.

PMC also cites to *Marbury* and a handful of other Supreme Court decisions to support the basic maxim that an act of Congress "repugnant to the [C]onstitution" is void and cannot become law. (Dkt. 19-1 at 4); *Marbury v. Madison*, 5 U.S. 137, 177 (1803). As Defendant recognizes, an unconstitutional act "is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, *as inoperative as though it had never been passed*." (Dkt. 19-1 at 4); *Norton v. Shelby Cty.*, 118 U.S. 425, 442 (1886) (emphasis added). PMC is undoubtedly correct in relying on these authorities, but its error lies in attempting to apply this precedent to the remaining statute. Once again, *AAPC* held that the government-debt exception, added by amendment in 2015, was unconstitutional—*not* the broader prohibition of autodialed calls. The act of Congress "repugnant" to the Constitution is the amendment that arrived by way of the Bipartisan Budget Act of 2015. That unconstitutional amendment is void and "inoperative as though it had never been passed." *Marbury*, 5 U.S. at 177; *Norton*, 118 U.S. at 442. In extending the holding of *Frost*, Justice Kavanaugh reaffirmed these principles that "an unconstitutional statutory amendment '*is a* **nullity**' *and* '**void**' *when enacted, and for that reason* **has no effect on the original statute**." *AAPC*, 140 S. Ct. at 2353 (emphasis added).

In sum, *Eberle* and *Frost*, as recognized expressly in *AAPC*, are good legal precedent, and they were decided in accordance with the prior holdings of *Marbury* and *Norton*. An amendment that is severed on grounds that it is unconstitutional does not poison or otherwise

render a pre-existing, constitutional law unenforceable for the time the amendment was on the books. Rather, the amendment itself is the act of Congress "repugnant" to the Constitution that has no effect on the original statute. Absent an express repeal of the law, the statute as it existed pre-amendment "must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526–27. PMC's position requires a misapplication of long-standing Supreme Court jurisprudence and an untenable misreading of *AAPC*. The Court should decline to adopt it.

> **B.  The Court Should Refuse PMC's Push To Follow *Creasy* And *Lindenbaum*, Both Of Which Minimized Justice Kavanaugh's Severability Analysis In Order To Effectuate The Rejected Remedy Proposed In The Dissent.**

Despite the precedent set forth in *AAPC* that counsels against invalidating the TCPA's entire autodialer ban, PMC urges the Court to adopt the reasoning employed in *Creasy* and *Lindenbaum*, two district court decisions that sided with *AAPC*'s dissent in determining that the unconstitutional amendment rendered the broader statute unenforceable. (*See* Dkt. 19-1 at 3, 5–6.) But, like Defendant's motion, neither *Creasy* nor *Lindenbaum* gave proper attention to Justice Kavanaugh's severability analysis and precedent that supports the majority's judgment. The Court should reject PMC's plea to become the next court to forgo the holding of *AAPC* in favor of its two-Justice dissent.

On September 28, 2020, the Eastern District of Louisiana concluded that it did not have jurisdiction over TCPA claims because it found, contrary to the holding of *AAPC*, that "the entirety of the [autodialer] provision" was rendered unconstitutional by the amendment. *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117, at *2 (E.D. La. Sept. 28, 2020). The *Creasy* court claimed it had "little more to guide it than passing Supreme Court dicta," referring to Footnote 12 of the *AAPC* opinion, but the court completely overlooked Justice Kavanaugh's analysis of severability and the precedent created by cases like *Frost*, *Eberle*, and

10

*Truax*. *Id.* at *2. Indeed, *Creasy* made no mention of these Supreme Court cases, and the court cited to *Marbury* only in passing. *See id.* at *3. Further, the court plainly admitted its belief "that Justice Gorsuch's is the better argument"—in other words, rather than adhere to the approach endorsed by seven Justices, *Creasy* elected to reject the Supreme Court's holding on severability of an unconstitutional amendment and instead follow the contrary two-member dissent to erode the TCPA's protection for consumers. *Id.* at *2.

The following month, the Northern District of Ohio reached a similar conclusion, relying on *Creasy* in finding that *AAPC*'s Footnote 12 was non-binding "*obitur dictum*" and that the broader statute was supposedly unconstitutional for the last five years. *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915, at *2, *5 (N.D. Ohio Oct. 29, 2020). Like *Creasy*, the *Lindenabum* court failed to consider *Frost*, *Truax*, or even *Marbury v. Madison*, and it likewise overlooked Justice Kavanaugh's analysis of these authorities. The court did, however, attempt to analyze *Eberle*, but Judge Gaughan claimed that *AAPC* "contained no discussion of *Eberle* and its effect on the retroactivity of severed statutes." *Id.* at *7.

Judge Gaughan incorrectly rejected the notion that an unconstitutional amendment would be void *ab initio*, despite the fact that this is *precisely* what Supreme Court precedent has required for more than one hundred years. *Compare id.* ("Although the plurality mentions that an unconstitutional statutory amendment is a 'nullity' and 'void'… it does not follow that the result is that the amendment never existed in the first place."), *with Norton*, 118 U.S. at 442 (holding that an unconstitutional act of Congress "is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, ***as inoperative as though it had never been passed***.") (emphasis added). Justice Kavanaugh cited *Frost* and *Marbury* in support of the proposition that "an unconstitutional statutory amendment 'is a nullity' and 'void'

11

*when enacted*, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (emphasis added); *Frost*, 278 U.S. at 526–27. To conclude otherwise, as Judge Gaughan did, is to ignore this analysis entirely or to otherwise reject its natural conclusion: that the 2015 Amendment to the TCPA was void when enacted, and it cannot be said to have rendered the TCPA unconstitutional because it was without effect and "inoperative as though it had never been passed." *Norton*, 118 U.S. at 442.

Just as the courts in *Creasy* and *Lindenbaum* did, PMC's argument maintains focus on Footnote 12 rather than the actual holding and analysis in *AAPC*. Justice Kavanaugh's severability analysis set forth in Section III—the portion of the plurality opinion agreed to by the *entire* Court except for Justices Gorsuch and Thomas—concludes with the following holding: "***In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction.***" *AAPC*, 140 S. Ct. at 2355. (emphasis added). Indeed, Footnote 12 modifies this holding in particular. *Id*. By focusing solely on the footnote, PMC impermissibly ignores Justice Kavanaugh's severability analysis and the centuries-old jurisprudence that supports treating an unconstitutional amendment as "void when enacted." *Id.* at 2353. Though *Creasy* and *Lindenbaum* may have turned a blind eye to Supreme Court precedent in order to shield TCPA defendants from liability, this Court should decline PMC's invitation to do the same.

By urging the Court to follow in the footsteps of *Creasy* and *Lindenbaum*, PMC is asking the Court to impermissibly elevate the Justice Gorsuch's dissent, joined only by Justice Thomas, above the six-member majority's severability judgment in *AAPC*. Unsurprisingly, PMC fails to provide any rationale for this because none exists. Though easier stated than applied, the *Marks* rule instructs that the holding in a plurality opinion "may be viewed as that position taken by

those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). The rule does *not* permit a lower court to simply adopt a dissent at the expense of reasoning agreed to by a majority of the Justices. Here, six members of the Court concluded that the government-debt exemption was unconstitutional, and seven members concluded that the exemption could be severed and "the entire 1991 robocall restriction should not be invalidated." *AAPC*, 140 S. Ct. at 2343. PMC cannot credibly call for the Court to reject the Supreme Court's holding and apply the rejected logic of the dissent.

As the Supreme Court noted, the TCPA's autodialer ban "proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*." *AAPC*, 140 S. Ct. at 2348 (emphasis in original). If PMC's position were accepted, all autodialed callers over the last five years would be shielded from liability. This remedial approach was encouraged by Justice Gorsuch, who urged a decision that would provide injunctive relief to anyone who sought reprieve from liability for unlawful robocalls. *Id.* at 2365 (Gorsuch, J., dissenting). But Justice Kavanaugh, in the portion of his opinion joined by six other Justices, roundly rejected this remedy:

> Justice Gorsuch's approach to this case would not solve the problem of harming strangers to this suit; it would just create a different and much bigger problem. His proposed remedy of injunctive relief, plus *stare decisis*, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted. Justice Gorsuch's remedy would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*Id.* at 2356. PMC is seeking the same blanket immunity that the Supreme Court refused to extend to AAPC. This Court should likewise refuse to grant it.

13

As a final point here, negating the TCPA for the past 5 years would suggest that Congress has the ability to attach "poison pills" in the form of unconstitutional Amendments to existing statutes to negate the constitutionality of the statute as a whole. The Court should reject such a legal interpretation.

### C. A Recent Case From The Middle District Of Florida Has Rejected *Creasy* And *Lindenbaum*.

Though PMC urges the Court to unflinchingly adopt the reasoning employed in *Creasy* and *Lindenbaum*, not every court has agreed to do so. On December 11, 2020, the Middle District of Florida issued an order expressly rejecting a bid to throw out TCPA claims for lack of subject matter jurisdiction. *Abramson v. Fed. Ins. Co.*, Case No. 8:19-cv-02523-TPB-AAS, dkt. 93 at 3–4 (M.D. Fla. Dec. 11, 2020) (attached hereto as "Exhibit A"). The *Abramson* defendant claimed that the *AAPC* holding precluded the plaintiff from bringing claims under the remainder of the TCPA's autodialer ban, but the court found the two cases cited in support of that approach—*Creasy* and *Lindenbaum*—outweighed by the "vast majority" of cases it reviewed that concluded "parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*." (Ex. A at 3–4); *see also, e.g.*, *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) ("[T]he Court severed the government-debt exception from the remainder of the statute, leaving the call restriction otherwise intact."); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1, n. 2 (D. Neb. Aug. 5, 2020) ("The Supreme Court held last month in Barr that [the government-debt exception] violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived.")

Rather than turn a blind eye to precedent as PMC's approach would require, the Court should reject the flawed reasoning of *Creasy* and *Lindenbaum* and acknowledge the centuries-

14

old precept that an unconstitutional act of Congress is a nullity—the unconstitutional amendment added to the TCPA in 2015 is powerless to invalidate the remainder of the statute.

## IV.  CONCLUSION

PMC's arguments for dismissal fail. Though the government-debt exception was unconstitutional, it was added to the TCPA by way of amendment that was "a 'nullity' and 'void' when enacted," and thus had no effect on the broader autodialer ban. Defendant fails to cite long-standing precedent that holds unconstitutional amendments are powerless to change preexisting, constitutional laws. PMC also ignores the thrust of Justice Kavanugh's severability judgment, with which a total of seven justices agreed, concluding that "the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." Defendant's only support is *Creasy* and *Lindenbaum*, two recent district court cases that likewise failed to appraise the Supreme Court's precedent regarding unconstitutional amendments. PMC's argument contradicts both Congressional intent and the controlling holding of *AAPC*, neither of which support a finding that the entire TCPA was ineffective for the last five years. Put simply, there is no legal justification for rejecting the Supreme Court's holding and elevating the dissent in order to shield PMC and its peers from liability for half a decade's worth of TCPA violations.

WHEREFORE, Plaintiffs respectfully request that the Court deny PMC's Motion to Dismiss and for such additional relief as the Court deems necessary, reasonable, and just.


DATED:  December 16, 2020                 Respectfully submitted,
                                          By:   /s/ Patrick H. Peluso

                                          V. Richards Ward, Jr., Esquire
                                          NH Bar #14262
                                          Law Office of V. Richards Ward, Jr., PLLC

39 North Main Street, Unit D-3
P.O. Box 1117
Wolfeboro, NH 03894
Rick@VRWardLaw.com
(603) 569-9222

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0676

*Attorneys for Plaintiffs*
*\*Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on December 16, 2020.

                                           /s/ Patrick H. Peluso
                                           Patrick H. Peluso