**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| RICHARD DASCHBACH and ELCINDA PERSON, individually, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ADVANCED MARKETING & PROCESSING, INC. d/b/a PROTECT MY CAR, a Florida corporation,<br><br>*Defendant.* | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br><br><br>Case No. 1:20-cv-706-JL |

## PRELIMINARY STATEMENT

Plaintiffs disregard several provisions within the TCPA and its implementing regulations, claiming that Defendant Advanced Marketing & Processing, Inc. d/b/a Protect My Car ("PMC") is arguing, and relying upon cases that are premised upon the view, that *AAPC* rendered the entirety of the TCPA unconstitutional from the 2015 amendment through the date of judgment in *AAPC*. Opp. at 1. However, PMC's Motion makes clear that PMC is arguing it is ***only*** "the entirety of that form of § 227(b)(1)(A)(iii) [*i.e.*, the one that contained the government-debt exception]" that is facially unconstitutional.

And that is exactly what the Supreme Court found when it held that the "robocall restriction with the government-debt exception"—*i.e.*, the version of 47 U.S.C. § 227(b)(1)(A)(iii) in effect from November 2, 2015 to July 6, 2020—"is content-based" and fails strict scrutiny, making that restriction null and void as facially unconstitutional content-discrimination in violation of the First Amendment. *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2347 (2020) ("*AAPC*"). Plaintiffs distort the *AAPC* ruling, arguing that *seven* justices ruled that the government-debt exception is severable and, somehow, the Court

should pretend as if nearly five years of content-based discrimination against PMC and others never happened.  First, the Court's severability analysis was advanced by only a plurality—not a majority.  Second, Plaintiffs' distortions cannot hide that severance is prospective only, and when Congress enacted *that* version of § 227(b)(1)(A)(iii), it facially and unconstitutionally discriminated against persons based on the content of their speech—telephone calls and texts made to collect government debt were exempted from liability but anyone subject to the TCPA who spoke about anything other than collecting government debt would be liable.  That renders the "robocall restriction with the government-debt exception" null, void, and unenforceable, and precludes subject-matter jurisdiction over claims based on the invalidated provision, *i.e.*, telephone calls and texts from November 2, 2015 to July 6, 2020.

As a result of the Supreme Court's severance of the government-debt exception from the "robocall restriction," the restriction in that rewritten—and constitutional—form may continue to be applied, but only ***prospectively***.  As PMC argued in the Motion, and as ***now three*** district courts have held,[1] settled principles of law provide that that the Supreme Court's ruling as to the version of § 227(b)(1)(A)(iii) in effect starting November 2, 2015, means no person can be subject to liability *under that law* for *prior* speech *during that period* because *that law* was facially unconstitutional.  While three justices of the Supreme Court in footnote 12 suggested otherwise, they provided no support or analysis of the relevant legal principles to the contrary.  Plaintiffs' misapplication of Justice Kavanaugh's severability analysis must be rejected in favor of the well-reasoned and well-supported decisions in *Creasy*, *Lindenbaum*, and *Hussain*.

---

[1] *Lindenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), and *Creasy v. Charter Commc'ns, Inc.*, No. CV 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), were approvingly cited in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-CV-38-OC-30PRL, 2020 WL 7346536, *3 (M.D. Fla. Dec. 11, 2020), where the court dismissed the case, holding "federal courts lack subject matter jurisdiction over alleged violations from enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC*."

## ARGUMENT

### I.   PLAINTIFFS MISCHARACTERIZE THE IMPACT OF *AAPC*

Plaintiffs attempt to avoid the impact of the Supreme Court's invalidation of the entirety of § 227(b)(1)(A)(iii) by arguing that only the government-debt exemption was declared unconstitutional.  Opp. at 6-13.  This is parsing taken to an extreme.  The Supreme Court was not considering the government-debt exemption in a vacuum.  As the plurality opinion made clear, "[t]he initial First Amendment question is whether ***the robocall restriction, with the government-debt exception***, is content-based.  The answer is yes."  *AAPC*, 140 S. Ct. at 2346 (emphasis added).  The plurality opinion also explained that "***a law*** is content-based if 'a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys,'" and proceeds to observe that "[u]nder ***§ 227(b)(1)(A)(iii)***, the legality of a robocall turns on whether it is 'made solely to collect a debt owed to or guaranteed by the United States.' . . .  That is about as content-based as it gets.  Because ***the law*** favors speech made for collecting government debt over political and other speech, ***the law*** is a content-based restriction on speech."  *Id.* (emphasis added).  Thus, the plurality opinion concluded in its First Amendment section, "the robocall restriction with the government-debt exception is content-based," and it fails strict scrutiny.  *Id.* at 2347.  Plaintiffs' reading is not faithful to the opinion.[2]

Plaintiffs' argument to the contrary is based upon language taken out of context *solely from the severability analysis* of the plurality opinion and other decisions.  Again, the Supreme Court determined that "***the robocall restriction*** with the government-debt exception is content-based," and that it (the restriction) fails strict scrutiny.  *Id.* at 2347 (emphasis added).  As PMC

---

[2] Justice Gorsuch's opinion, which provided the fifth vote on this question to form a holding, likewise makes clear that the "autodialer provision" was before the Supreme Court.  *See id.* at 2363-64 ("The TCPA is full of regulations on robocalls. . . .  The only provision before us today, however, concerns robocalls to cell phones, mobile devices, or 'any service for which the called party is charged for the call.' 47 U.S.C. § 227(b)(1)(A)(iii). . . .  In my view, the TCPA's rule against cellphone robocalls is a content-based restriction that fails strict scrutiny.").

argues, and the *Creasy*, *Lindenbaum*, and *Hussain* courts correctly understood, that finding rendered § 227(b)(1)(A)(iii) null and void as a violation of the First Amendment.  All of the subsequent language in *AAPC* about not invalidating the entirety of the "robocall restriction," *i.e.*, § 227(b)(1)(A)(iii), as unconstitutional was solely in deciding whether the restriction could be saved from unconstitutionality *in toto*, and ***prospectively***, under a severability analysis.  Plaintiff in *AAPC* argued it could not; the Supreme Court disagreed.  But that severability analysis was necessitated by the fact that the robocall restriction with the government-debt exception, *i.e.*, the law in effect at the time of the alleged calls, violated the First Amendment by discriminating based on content, was facially unconstitutional, and could not remain in place in that form.  Otherwise, there would have been no need to sever to save the restriction.

Plaintiffs overlook that Justice Kavanaugh's analysis was in the context of whether § 227(b)(1)(A)(iii) was severable and with an eye to whether the restriction in that provision could *continue* to be enforced *prospectively*.  That is irrelevant to and plays no part in the question of whether a severed statute can be applied *retroactively* as if the severed portion was never enacted so as to magically transform speech, including allegedly PMC's, to never having been restricted in a facially discriminatory, unconstitutional, and unenforceable manner.[3]

Moreover, Plaintiffs' construct that the Supreme Court ruled only that the government-debt exception was unconstitutional runs counter to the fact that the First Amendment bars laws "abridging the freedom of speech," (U.S. Const., Amend. I), not a portion of a law permitting speech (such as the government-debt exception).  It would make no sense for a court to find that a "provision" *permitting* speech unconstitutionally discriminates based on the content of speech.

---

[3] For the same reasons, the post-*AAPC* decisions cited by Plaintiffs and filed as supplemental authority, (Opp. at 14; DE 22, 24), are inapposite as they rely on the same inapplicable decisions cited by Plaintiffs and fail to meaningfully address the established principle that severance is prospective only and cannot provide the Court with subject-matter jurisdiction to enforce a severed statute retroactively as if the discriminatory and unconstitutional provision had never been enacted.  *See*, *e.g.*, *Hussain*, 2020 WL 7346536 at *3; *Lindenbaum*, 2020 WL 6361915 at *7.

The impermissible content discrimination occurred only because disfavored speech was restricted.  While Plaintiffs take the *Creasy* and *Lindenbaum* courts to task for misunderstanding the Supreme Court's ruling, those judges, as well as the court in *Hussain*, correctly rejected Plaintiffs' proposed reading of *AAPC*:

> [W]hile the Plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, **the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis**. Simply put, a restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears. A review of the statutory text before and after the addition of the government-debt exception confirms as much . . . .

> Viewing these provisions side-by-side shows how Congress's addition of a single exception could fundamentally alter the *entire* provision. Without the exception, § 227(b)(1)(A)(iii) bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in *AAPC*. . . .

> This is not a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[ ] the whole [provision] void."  Precisely the opposite is the case here: **the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in *AAPC*.**

*Creasy*, 2020 WL 5761117 at *5 (internal citations omitted) (bolded emphasis added); *see also Hussain*, 2020 WL 7346536 at *3; *Lindenbaum*, 2020 WL 6361915 at *7.

## II.     PLAINTIFFS FAIL TO DISTINGUISH *CREASY*, *LINDENBAUM*, AND *HUSSAIN*

Plaintiffs argue the Court should not follow *Creasy* or *Lindenbaum* because they disregard the Court's purported holding and analysis in *AAPC*.  Presumably, Plaintiffs would also argue the same about *Hussain*.  As a threshold matter, Plaintiffs are incorrect in stating that this Court would adopt the dissent over the majority in following *Creasy* and *Lindenbaum* because they erroneously identify a three-justice plurality as a majority in a vain attempt to avoid dismissal.  Further, the *Creasy*, *Lindenbaum*, and *Hussain* courts did not disregard the holding in

*AAPC* but, unlike Plaintiffs, correctly understood that severability, discussed by the ***plurality*** in *AAPC*—not the majority—is *prospective* only and cannot apply retroactively.

Plaintiffs do not dispute that what made the iteration of § 227(b)(1)(A)(iii) that applies to the alleged telephone calls and texts over which Plaintiffs are suing *facially* unconstitutional and unenforceable is that at the time of that alleged speech, the vast majority of persons subject to that law, including PMC, were victims of a restriction of speech that facially discriminated based on content.  A facially unconstitutional law is invalid and cannot be applied to anyone.  *Whiting v. Town of Westerly*, 942 F.2d 18, 21 n.3 (1st Cir. 1991) (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974)); *see City of Chicago v. Morales*, 527 U.S. 41, 74 (1999) (Scalia, J., dissenting) ("When a facial challenge is successful, the law in question is declared to be unenforceable in *all* its applications . . . .").  Thus, if the party asserting the facial challenge is right, "the [law] was unconstitutional when enacted and violates their [constitutional] rights every day it remains on the books."  *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011). The iteration of § 227(b)(1)(A)(iii) at issue in this case was unconstitutional when enacted and violated the First Amendment each day it was "on the books," and cannot be enforced as to anyone.

As Justice Gorsuch observed in his concurring opinion, shielding "*only* government-debt collection callers from past liability under an admittedly unconstitutional law," as footnote 12 of the plurality opinion proposes, "would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate."  *AAPC*, 140 S. Ct. at 2366.  Nor would that be in accordance with the law, as detailed in PMC's Motion.  As the *Lindenbaum* court held, "at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction.  The Court cannot wave a magic wand and make that constitutional violation disappear."  2020 WL 6361915 at *7.

Rather than address these principles, Plaintiffs advance their narrative that PMC is arguing the entire TCPA has been invalidated and rely upon pronouncements and exhortations regarding how severability determinations should be made, completely ignoring those discussions are all focused on prospective applications and implications of a severance ruling. Opp. at 6-11.  But severance doesn't mean the unconstitutional law never existed, the severed version of the law can now be enforced retroactively as if the law had never been enacted and was "on the books" in unconstitutional form, or that the victims of content discrimination can be subjected to liability, still in discriminatory fashion, for speech that was facially and unconstitutionally discriminated against (with government debt collectors remaining exempted).

As argued in the Motion, and left unaddressed by Plaintiffs in their Opposition, under general principles "severance of the government-debt exception applies only prospectively." *Lindenbaum*, 2020 WL 6361915 at *3; s*ee also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017) ("***Going forward***, Congress may address the issue and settle on a uniform prescription that neither favors nor disadvantages any person on the basis of gender.  In the interim, as the Government suggests, § 1401(a)(7)'s now-five-year requirement should apply, ***prospectively***, to children born to unwed U.S.-citizen mothers.") (emphasis added); *Arthrex, Inc. v. Smith & Nephew, Inc*., 953 F.3d 760, 767 (Fed. Cir. 2020) (O'Malley, J., concurring) ("[J]udicial severance is not a 'remedy'; it is a ***forward-looking*** judicial fix.") (emphasis added); *Hussain*, 2020 WL 7346536 at *3 (agreeing that "the Supreme Court's severance of the government-debt exception applies prospectively," and *AAPC*'s severance of the government-debt exception "cannot be retroactively applied").  Plaintiffs elect not to address this legal principle, including its recent embodiment in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2208 (2020), where the Supreme Court severed an unconstitutional

provision regarding the limited ability to remove the head of the agency, remanding to address whether the agency's subject pre-severance act was validly ratified to avoid constitutional infirmity. *Id.* As observed in *Lindenbaum*, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified." 2020 WL 6361915 at *6 n.1.

Plaintiffs repeatedly ignore that the consideration of Congress's "intensity of commitment to the residual policy–the main rule, not the exception," (*Morales-Santana*, 137 S. Ct. at 1700), applies to the decision of what to sever and what to "keep on the books" so that it can *continue* to operate. That is entirely separate from what to do with the unconstitutional law that Congress enacted, pre-severance. In the case of a facially unconstitutional provision such as the version of § 227(b)(1)(A)(iii) in effect from November 2, 2015 to July 6, 2020, the answer is "nothing," because a court has no subject-matter jurisdiction to enforce such a law.[4]

Plaintiffs point to cases like *Frost v. Corp. Commission of Oklahoma*, 278 U.S. 515 (1929), as some kind of "smoking gun" avoided by PMC but, in reality, Plaintiffs misapply these cases in an attempt to improperly apply severance of the government-debt exception retroactively. Plaintiffs champion *Frost* as support for their erroneous conclusion that only the government-debt exception was invalidated, but, again, the entire "robocall restriction with the government-debt exception," (140 S. Ct. at 2347), was held to be facially unconstitutional and cannot be applied to anyone. Moreover, while the *AAPC* plurality opinion cited to *Frost* and other cases, it is clear from those decisions that *Frost* and the other cases were relied upon to confirm the severability of the statute because, by virtue of being unconstitutional, the amendment to the previously-valid law could be disregarded in determining legislative intent in

---

[4] *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-60 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is as no law.'") (quoting *Marbury v. Madison*, 5 U.S. 137, 178 (1803); *Ex parte Siebold*, 100 U.S. 371, 376, 376 (1879).

deciding whether the statute was severable, as the unsullied  pre-amendment version "stand[s] as the only valid expression of the legislative intent" and remained valid, which favored severability.  278 U.S. at 526-27.

While *Frost* and other decisions cited by Plaintiffs, such as *Eberle v. People of State of Michigan*, 232 U.S. 700 (1914), were cited in the *AAPC* plurality, the plurality opinion "contained no discussion regarding *Eberle* [or *Frost*] and its effect on the retroactivity of severed statutes.  Rather, it cited *Eberle* and other cases from early last century [such as *Frost*] to support the concept that severance of the government-debt exception does not affect the validity of the remainder of the statute." *Lindenbaum*, 2020 WL 6361915 at *7.  There are two more indications the *AAPC* plurality did not embrace the notion that the government-debt exception was always a nullity that never had any legal effect.  First, the plurality opinion explains that an invalidated law does not formally repeal it from the U.S. Code; instead, the Court recognizes the Constitution as a superior law and that the Court's authority on this issue "amounts to little more than the negative power to disregard an unconstitutional enactment." *AAPC*, 140 S.Ct. at 2351 n.8.  Courts disregard an unconstitutional law by lacking subject-matter jurisdiction to enforce it—not by pretending there was never an unconstitutional law added to the Code.

Second, there is no way to square the view that the 2015 amendments to § 227(b)(1)(A)(iii) never were and never had any effect with footnote 12's suggestion that government-debt collectors should not be liable for pre-severance speech because, "in essence, footnote 12 indicates the statute as amended [by Congress in 2015] should be enforced with respect to government-debt collector robocalls made during this period," that is, they continue to remain exempted from liability. *Lindenbaum*, 2020 WL 6361915 at *7. (quoting *AAPC*, 140 S. Ct. at 2355, n.12).  But that could only have emanated from the legislation that the *AAPC* court

deemed to be unconstitutional, so it cannot be a nullity.  And if severance does not retroactively eliminate the exemption from liability, it certainly cannot be used to retroactively impose liability as if Congress never enacted a facially unconstitutional law that violated the First Amendment every day it was in force.

Nor can this Court pretend the unconstitutional version of § 227(b)(1)(A)(iii) never happened and act as if there was no discriminatory government-based exception.  Plaintiffs, under the guise of defending the entire TCPA from invalidation that no one is seeking, bemoan the need to not "shield" callers from liability and, instead, permit the retroactive application of a facially unconstitutional restriction on speech, but Justice Kavanaugh's disagreement with Justice Gorsuch's position on severance on those grounds was because it would eliminate the TCPA's robocaller restriction *prospectively*.   *See AAPC*, 140 S. Ct. at 2356 ("Justice GORSUCH's remedy ***would end up harming*** a different and far larger set of strangers to this suit—the tens of millions of consumers ***who would be bombarded*** every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.") (emphasis added). That has nothing to do with the issue here: whether courts have jurisdiction over claims regarding *prior speech* that was subject to the pre-severance, facially unconstitutional law.

Finally, the issue of whether the Court's severance of the government-debt exception applies retroactively to prior, restricted speech was not addressed in *AAPC* because there was no claim for liability, nor anything in the record to suggest any potentially violative calls had even been made.  Rather, the Plaintiffs in that case were "political and nonprofit organizations that ***want*** to make political robocalls to cell phones" and sought a declaratory judgment and injunction to permit such calls.  *AAPC*, 140 S. Ct. at 2343 (emphasis added); *see also Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737, 741 (E.D.N.C. 2018).

## CONCLUSION

For the foregoing reasons, PMC respectfully requests that the Court enter an order dismissing this case for lack of subject-matter jurisdiction, and providing any other relief the Court deems just and appropriate.

Dated:  January 13, 2021

_/s/ Steven J. Dutton_____

Steven J. Dutton (NH Bar. No.: 17101)
**MCLANE MIDDLETON P.A.**
900 Elm Street
Manchester, NH 03101
Telephone: (603) 628-1379
Email: steven.dutton@mclane.com

Jeffrey A. Backman (Florida Bar No.: 662501)*
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile: 954.343.6958
Email: jeffrey.backman@gmlaw.com
*Attorneys for Defendant, Advanced Marketing & Processing, Inc.*

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2021, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record identified on the attached service list.

By: ___/s/ Steven J. Dutton_____
        Steven J. Dutton

# **SERVICE LIST**

V. Richards Ward, Jr.
NH Bar #14262
Law Office of V. Richards Ward, Jr., PLLC
39 North Main Street, Unit D-3
P.O. Box 1117
Wolfeboro, NH 03894
Rick@VRWardLaw.com
Telephone: (603) 569-9222

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com
Telephone: (720) 213-0676

117403\16588024.v1