UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Richard Daschbach, et al.

     v.                                                 Civil No. 20-cv-0706-JL
                                                               Opinion No. 2021 DNH 059
Advanced Marketing & Processing, Inc.

## MEMORANDUM ORDER

The motion before the court centers on two issues – the court's personal jurisdiction over the claims of an out-of-state named plaintiff and putative, out-of-state class members, and the formation of an online agreement to arbitrate. The plaintiffs, Richard Daschbach and Elcinda Person, are residents of New Hampshire and Georgia, respectively. They allege that they received unsolicited, autodialed telemarketing communications on their personal cellular telephones from the defendant Advanced Marketing and Processing, Inc. d/b/a Protect My Car ("PMC"), an auto warranty company headquartered in Florida. Daschbach and Person filed a putative class action complaint in this court in June 2020, arguing that PMC violated the Telephone Consumer Protection Act by sending these unsolicited communications. PMC responded with this motion. The court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 9 U.S.C. § 4 (FAA).

In this motion, PMC argues that the court lacks personal jurisdiction over it as to the claims of Person and the out-of-state putative class members. Thus, PMC moves to dismiss these claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Separately, PMC asserts that, a couple months prior to the allegedly unsolicited communications, both plaintiffs visited websites in which they agreed to receive communications from PMC and to be bound by the websites' terms, which included arbitration of any disputes with PMC.

Accordingly, PMC moves to compel arbitration of the TCPA claims and stay or dismiss the plaintiffs' suit, under the Federal Arbitration Act.

After reviewing the parties' submissions and holding oral argument, the court grants PMC's motion for dismissal of Person's claim for lack of personal jurisdiction, concluding that the doctrine of pendent personal jurisdiction does not apply here.  The court denies without prejudice the motion to dismiss the claims of putative, out-of-state class members, as this issue is better resolved at the class certification stage.  Finally, before deciding the motion to compel arbitration, the court will conduct an evidentiary hearing on the material factual dispute surrounding the formation of an arbitration agreement between PMC and the remaining plaintiff, Daschbach.

**I.     Applicable legal standards**

   **A.  Motion to dismiss for lack of personal jurisdiction**

When a defendant challenges personal jurisdiction, "the plaintiff has the burden of showing that jurisdiction exists." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) (quoting Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 (1st Cir.1986)).  The plaintiff must meet this burden under one of a "trio of standards" which the court selects. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (internal citation omitted).

Under this standard, the court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit, 967 F.2d at 675.  To satisfy the prima facie standard, the "plaintiff must go

beyond the pleadings and make affirmative proof." Chlebda v. H. E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). The court, in turn, "take[s] specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim . . . ." Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

### B. Motion to compel arbitration

The First Circuit Court of Appeals has not announced the standard of review for a motion to compel arbitration, but district courts within this circuit apply the summary judgment standard. See, e.g., Hall-Cloutier v. Sig Sauer, Inc., 2018 WL 377057, at *1 (D.N.H. Jan. 11, 2018) (McCafferty, J.) ("courts in the First Circuit employ the summary judgment standard in resolving a motion to compel arbitration" (citing Landry v. TimeWarnerCable, Inc., 2017 WL 3431959, at *1 (D.N.H. Aug. 9, 2017)); Snow v. BE & K Const. Co., 126 F. Supp. 2d 5, 7 (D. Me. 2001) (internal citation omitted) (same). Here, the parties' dispute concerns the existence of the arbitration agreement. Thus, under the summary judgment standard, PMC must "assert the absence of a genuine issue of material fact" as to the formation of the arbitration agreement, "and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted). The plaintiffs "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." Soto v. State Indus. Prod., Inc., 642 F.3d 67, 72 n.2 (1st Cir. 2011) (quoting Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir.

2002)). As it is obligated to do in the summary judgment context, the court "rehearse[s] the facts in the light most favorable to the nonmoving party (here, the plaintiff[s]), consistent with record support," and gives them "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 82 (1st Cir. 2005) (internal citation omitted).

## II. Background

The court recites the facts keeping in mind the nature of each of the motions before the court, drawing the facts pertinent to the motion to dismiss for lack of personal jurisdiction from the operative complaint, and including undisputed facts from the defendant. Massachusetts Sch. of L., 142 F.3d at 34. And "[b]ecause [PMC's] motion to compel arbitration was made in connection with a motion to dismiss or stay, [the court] draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (internal citation omitted).

### A. Jurisdictional facts

Daschbach is a resident of New Hampshire. Person is a resident of Georgia. The defendant PMC is an auto warranty company headquartered in St. Petersburg, Florida, which conducts business across the country and engages in nationwide telemarketing efforts, including within the state of New Hampshire.[1] PMC does not maintain an office or call center in New Hampshire, nor does it have property, employees, bank accounts, or telephone numbers in the state.[2]

---

[1] Complaint (doc. no. 1) at ¶ 3.

[2] Declaration of Stuart C. Reed (doc. no. 12-6) at ¶ 4.

**B. Facts pertaining to Plaintiff Daschbach**

In May 2019, Daschbach received a call on his personal cell phone from the telephone number 727-835-8246. Daschbach answered the call and said "hello" several times before he was connected to an individual. This delay is indicative of an autodialed call. On the other end of the call was a live agent for PMC. The agent tried to sell PMC's extended auto warranty options to Daschbach. After the call, Daschbach received an email from PMC's David Marra with a sample auto warranty policy.

According to PMC, a couple months before receiving these communications, Daschbach visited a website at the address http://signup.finddreamjobs.com (the "Jobs Website" or "Website").[3] A subsidiary of Fluent, LLC operates the Website. Fluent maintains a database that stores information about its websites' visitors, including the visitors' IP addresses, the timing and nature of their interactions with the website, and what was displayed to the visitors.[4] A search for "information stored in the [d]atabase with respect to [] Daschbach" produces the following information.[5] In April 2019, a user visited the Jobs Website and entered the following identifying information: Daschbach's name, a telephone number, and a mailing address of "Exeter, NH 03833."[6] On the same page, the user clicked a large, green button with bold, white letters spelling "Submit.," as seen below.[7]

---

[3] Affidavit of Mitenkumar Bhadania ("Bhadania Affidavit 1") (doc. no. 12-3) at ¶ 6.

[4] Id. at ¶¶ 3-4.

[5] Id. at ¶ 4.

[6] Id. at ¶¶ 6-7, 11.

[7] Id. at ¶¶ 7-8.

> I understand and agree to the Terms which includes mandatory arbitration and Privacy Policy, and agree to receive daily emails from FindDreamJobs.com.
>
> Skip to Results
>
> **SUBMIT**

As the image shows, the underlined phrase "Skip to Results" appeared directly above the "Submit" button, in black font. Above that was a sentence in smaller, lighter black font that read in part: "I understand and agree to the Terms which include[] mandatory arbitration . . . ." The underlined word "Terms" was a hyperlink, and, had the user clicked on that hyperlink, it would have led to a page entitled "Search Works Media, LLC Job-Listing Related Sites Terms & Conditions," which listed the Website's terms in full.[8] The terms included a section entitled "Arbitration / Dispute Resolution." That section provided, in part:

> You agree to arbitrate any and all claims arising out of or related to the Agreement. . . . An AAA arbitrator will have exclusive authority to resolve any dispute or claims that you may have with us—and our Marketing Partners who are third-party beneficiaries of the mandatory arbitration provision—arising out of or related to the Agreement. Matters subject to mandatory arbitration include, without limitation, whether this Arbitration/Dispute Resolution provision applies to your particular claim or dispute, and any claim that all or any part of the Agreement, including this provision, are/is unenforceable.[9]

While visiting the Jobs Website, the user, who PMC asserts was Daschbach, also landed on a page ("Marketing Page") with a message explaining that, by checking the provided box and clicking the "Submit" button, the user understood that she may receive text messages or phone

---

[8] Id. at ¶¶ 8-9; Mot. to Compel Ex. D (doc. no. 12-5) at 2.

[9] Mot. to Compel Ex. D (doc. no. 12-5) at 6.

calls from "our Marketing Partners."[10] The marketing partners included PMC.[11] The user checked the box and clicked the "Submit" button below it.[12]

Daschbach claims that he is not seeking a job, and he never visited the Jobs Website or authorized anyone else to visit it on his behalf.[13] Daschbach further asserts that he earned his law degree at Georgetown University in 1962, has been a member of the District of Columbia Bar since 1966, and served as the Chief Judge of the Federal Employees' Compensation Appeals Board from 2011 to 2014.[14]

### C. Facts pertaining to Plaintiff Person

The facts surrounding Person are similar to those described above. Around the time that Daschbach received a call from PMC, Person received a text message on his personal cell phone from the telephone number 855-910-6113. The text message promoted PMC's extended auto warranty and instructed Person to connect to a website, http://protectmycar.com/getafreequote, or to call the number 855-282-7470.

According to PMC, a couple months before Person received these communications, he visited a website at the address www.retailproductzone.com ("Retail Website").[15] A Fluent subsidiary also operates the Retail Website, and Fluent stores information about visits to the

---

[10] Bhadania Affidavit 1 (doc. no. 12-3) at ¶ 12.

[11] Id. at ¶ 13.

[12] Id. at ¶¶ 14, 16.

[13] Declaration of Richard Daschbach (doc. no. 14-1) at ¶¶ 4, 9.

[14] Id. at ¶¶ 6-8.

[15] Affidavit of Mitenkumar Bhadania ("Bhadania Affidavit 2") (doc. no. 12-2) at ¶ 6.

Retail Website in its database. A search for "information stored in the [d]atabase with respect to [] Person" produces the following information.[16] In March 2019, a user visited the Retail Website and entered the following identifying information: Person's name, a telephone number, and a mailing address in College Park or Atlanta, Georgia.[17] Below these entries, the user clicked a large, blue button with bold, white letters spelling "Continue," as seen below.[18]

> By clicking below, I agree to email marketing, the Privacy Policy, which details personal info collection practices and the Terms & Conditions, including a mandatory arbitration provision.
>
> **Continue**

As the image shows, the message directly above the "Continue" button reads: "By clicking below, I agree to . . . the Terms & Conditions, including a mandatory arbitration provision." The underlined phrase "Terms & Conditions" was a hyperlink, and, had the user clicked on the hyperlink, it would have led to a page entitled "RewardZone USA, LLC Websites Terms & Conditions."[19] This page listed the full terms and conditions of the Retail Website, including a section entitled "Arbitration / Dispute Resolution." This section was identical to the section of the same title excerpted above.[20]

While visiting the Retail Website, the user, who PMC asserts was Person, also landed on a Marketing Page similar to the one described above, which explained that, by checking the

---

[16] Id. at ¶ 5.

[17] Id. at ¶¶ 6-7, 11.

[18] Id. at ¶¶ 7-8.

[19] Id. at ¶ 9; Mot. to Compel Ex. C (doc. no. 12-4) at 2.

[20] Mot. to Compel Ex. C (doc. no. 12-4) at 5.

provided box the user "request[ed] and consent[ed] to receive phone sales calls and text messages . . . from . . . our Marketing Partners . . . ."[21] The marketing partners included PMC.[22] The user checked the box and clicked the "Continue" button on the page.[23]

Person asserts that he never visited the Retail Website, nor did he authorize anyone to visit it on his behalf.[24] Person also claims that he rarely uses the internet, and he owns one internet connective device—a phone—which he "never use[s]" to access the internet."[25]

### D. Procedural background

Daschbach and Person filed a putative class action complaint in this court in June 2020, alleging that PMC violated the TCPA by making unsolicited "autodialed telemarketing calls" or "autodialed telemarketing text messages" to the plaintiffs and other members of the Autodialed Call Class and Autodialed Text Class, respectively. In response to the complaint, PMC filed this motion, requesting an order compelling arbitration and staying or dismissing the plaintiffs' action under the FAA. Alternatively, PMC moves to dismiss the claims of Person and the out-of-state, putative class members for lack of personal jurisdiction. The court addresses each motion in turn, beginning with the motion to dismiss for lack of personal jurisdiction, as the court must have personal jurisdiction over the parties in order to compel them to arbitrate a dispute. See InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) ("[S]o long as the parties

---

[21] Bhadania Affidavit 2 (doc. no. 12-2) at ¶ 12.

[22] Id. at ¶ 13.

[23] Id. at ¶¶ 14, 16.

[24] Declaration of Elcinda Person (doc. no. 14-2) at ¶ 4.

[25] Declaration of Richard Daschbach (doc. no. 14-1) at ¶¶ 6-7.

are bound to arbitrate and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration . . . .").

**III.     Analysis**

    **A.  Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction**

PMC moves to dismiss Person's claim and the claims of out-of-state, putative class members on the ground that the court lacks personal jurisdiction over PMC as to these claims. PMC is correct that the court cannot exercise personal jurisdiction over PMC as to Person's claim. PMC's motion to dismiss the claims of putative class members is premature, however, and should be addressed once the plaintiffs move for class certification.[26]

    **i.  Personal jurisdiction as to Person's claim**

"A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Massachusetts Sch. of L., 142 F.3d at 34. General jurisdiction exists when a "corporation's general business contacts with the forum are sufficiently continuous and systematic as to render it essentially at home in the forum State." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 57 (1st Cir. 2020) (internal quotation omitted). "The paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business." Id. (citing BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017)). "Specific jurisdiction exists when there is a

---

[26] As previously explained, to satisfy the prima facie standard, the "plaintiff must go beyond the pleadings and make affirmative proof" of the facts establishing personal jurisdiction. Chlebda, 609 F.2d at 1024. The plaintiffs do not provide proof outside of the pleadings of any jurisdictional facts pertaining to Person or the putative, out-of-state plaintiffs. Nevertheless, the court proceeds to analyze the plaintiffs' arguments for personal jurisdiction and finds them unavailing for reasons that are largely not fact-based.

demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Swiss Am. Bank, 274 F.3d at 618 (internal quotation omitted).

The plaintiffs concede that the court lacks general jurisdiction over PMC.[27] And the plaintiffs do not argue that the court has specific personal jurisdiction as to Person's claim. Rather, the plaintiffs contend that, since the court has specific personal jurisdiction over PMC as to Daschbach's claim (which is not in dispute), the court can also exercise personal jurisdiction as to Person's claim under the doctrine of pendent personal jurisdiction.

This doctrine provides that "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court." 4A C.A. Wright & M.K. Miller, Federal Practice & Procedure § 1069.7 (4th ed.). When applicable, this doctrine can be beneficial for the purposes of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties . . . ." Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir.2004).

This doctrine does not apply here, as Person's claim does not share a common nucleus of facts with Daschbach's claim. The claims arise out of two different, purported interactions with the defendant. Daschbach's claim against PMC centers on an autodialed phone call from PMC to his personal cell phone. Person's claim concerns an autodialed text message from PMC to his personal cell phone. The call and the text message originated from different phone numbers. Moreover, different evidence and witnesses would likely be necessary to establish a TCPA violation against each plaintiff. See First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 400 (S.D.N.Y. July 29, 2002) (finding no common nucleus of operative fact

---

[27] Pls.' Opp'n (doc. no. 14) at 13.

between the plaintiffs' federal and state claims and declining to exercise pendent personal jurisdiction over the former in part because "different evidence and different witnesses likely would be required to establish liability."). For example, the issue of consent to receive PMC's communications turns on each plaintiff's independent interactions with two different websites; relevant evidence could include each plaintiff's IP address, browser history, patterns of internet use, and testimony. The court may also need to undertake a detailed analysis of the specific (and unique) format of each website.

Person's and Daschbach's claims are based on two separate sets of underlying facts, so the court cannot consider exercising personal jurisdiction over PMC as to Person's claim based on the doctrine of pendent personal jurisdiction. Since the plaintiffs do not present any other arguments for personal jurisdiction as to Person's claim, and the court sees none, the court grants PMC's motion to dismiss Person's claim for lack of personal jurisdiction.[28]

### ii. Personal jurisdiction as to the claims of putative, out-of-state class members

PMC also argues that the court lacks personal jurisdiction over PMC as to the claims of out-of-state, putative class members "who can assert no claim upon any nexus to this forum."[29] Since the plaintiffs have not yet moved for class certification, this argument concerns potential, putative class members, who may or may not exist. This issue is better resolved at the class certification stage. See Rain v. Connecticut Gen. Corp., 2019 WL 7604856, at *4 (D. Mass. Aug. 6, 2019) ("[T]he appropriate time" to consider "personal jurisdiction over Defendants as to

---

[28] Since the court finds the doctrine of pendent personal jurisdiction inapplicable to Person's claim based on the absence of a common nucleus of operative fact, as discussed, the court need not assess PMC's additional argument that pendent personal jurisdiction can only apply to the additional claim(s) of the same plaintiff who asserts a claim over which the court has personal jurisdiction.

[29] Mot. to Compel (doc. no. 12-1) at 15 (emphasis omitted).

the claims of non-resident putative class members" is "at the class certification stage, when Plaintiff seeks to transform this action from a traditional suit on her own behalf . . . to a class action in accordance with Rule 23." (citing Evan v. Taco Bell Corp., 2005 WL 2333841, at *4 (D.N.H. Sept. 23, 2005)).  The court denies PMC's motion to dismiss the claims of these class members for lack of personal jurisdiction, without prejudice to raising the claim again under a different procedural posture.  The court now turns to the motion to compel arbitration, focusing only on the arguments surrounding the remaining plaintiff, Daschbach.

### B.  Motion to compel arbitration

PMC moves under the FAA for an order compelling arbitration of Daschbach's TCPA claim, arguing that Daschbach agreed to arbitrate any disputes with PMC through his interactions with the Jobs Website.  PMC also requests the court to stay or dismiss Daschbach's suit upon granting the motion to compel.  Daschbach avers that he did not consummate an arbitration agreement with PMC, as he did not visit the Jobs Website, and the Website does not properly provide notice of, or obtain assent to, the arbitration agreement.  Given the material dispute of fact concerning Daschbach's visit to the Website, the court will hold an evidentiary hearing on the same before deciding the motion to compel arbitration.

### i.   The FAA and its threshold requirements

Some background on the FAA is helpful at the outset, to ground PMC's motion. "Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581 (2008) (internal quotation omitted).  To that end, § 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. Section 4 of the FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," to petition a court for an order compelling arbitration, as PMC has done here. 9 U.S.C. § 4. And § 3 requires the court to stay a suit upon finding that an issue involved in the suit is "referable to arbitration." 9 U.S.C. § 3. Alternatively, a "court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 372 (1st Cir. 2011) (quoting Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010)).

As a foundational matter, "the existence of an enforceable agreement to arbitrate is the first needed step to trigger the FAA's protective reach." Rivera-Colón v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200, 207 (1st Cir. 2019) (internal citation omitted). And the party seeking to compel arbitration, PMC, "bears the burden of . . . demonstrating that a valid agreement to arbitrate exists." Id. (quoting Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011)).

PMC requests that the court submit the issue of the existence, or formation, of an arbitration agreement to the arbitrator. PMC argues that the arbitration agreement's delegation provision "sends the question of the validity and enforceability of the Arbitration Agreement along with any gateway issues to the arbitrator."[30] PMC's reliance on the delegation provision is misplaced. The Supreme Court has recognized that parties can use delegation provisions "to agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed

---

[30] Mot. to Compel (doc. no. 12-1) at 5. Specifically, the delegation provision subjects to arbitration matters including "without limitation, whether this Arbitration/Dispute Resolution provision applies to your particular claim or dispute, and any claim that all or any part of the Agreement, including this provision, are/is unenforceable." Doc. no. 12-5 at 6.

to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010) (internal citations omitted).  But a delegation provision cannot displace the court's role in determining the threshold issue of whether an arbitration agreement exists.  See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (noting that "[t]he Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator," but "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists" (citing 9 U.S.C. § 2)); Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 80 (1st Cir. 2018) ("a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement . . . .").  Thus, the court, and not an arbitrator, must determine whether an arbitration agreement exists between PMC and Daschbach.[31]

---

[31] To bolster its argument, PMC occasionally characterizes the dispute presently before the court as one concerning the validity of the arbitration agreement.  See, e.g., Mot to Compel (doc. no. 12-1) at 6 ("If Plaintiffs question the validity of the Arbitration Agreement this Court's analysis ends and the question goes to the arbitrator.").  But Daschbach disputes the formation (or existence) of the arbitration agreement, not its validity.  As the Court of Appeals has noted, "there's an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation." Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 80 (1st Cir. 2018) (emphasis in original).  The former concerns "the enforceability of the agreement and if it is void or voidable," and the latter concerns "acceptance of an offer on specified terms." Id. (internal citations omitted).  This distinction is particularly important here because the Supreme Court has held that "a challenge to the validity of [an arbitration] agreement as a whole," without a specific challenge to the delegation provision, "[is] for the arbitrator" if the delegation provision submits to arbitration the enforceability of the agreement. Rent-A-Ctr., 561 U.S. at 72 (emphasis added).  PMC relies on this precedent, arguing that the dispute before the court should be arbitrated because the plaintiffs challenge the validity of the whole arbitration agreement, and not the delegation provision specifically.  See, e.g., Def.'s Reply (doc. no. 16) at 3.  The court need not engage with this argument, as it is premised on a mischaracterization or misunderstanding of the dispute.

### ii. The existence of an arbitration agreement

The dispute surrounding the existence of the arbitration agreement is fairly straightforward. PMC submitted an affidavit from Mitenkumar Bhadania, a Computer System Engineer at Fluent, the company that operates the Jobs Website. Bhadania asserts that, based on Fluent's records, a user visited the Jobs Website in April 2019, entered Daschbach's name, an address, and a telephone number, and clicked the "Submit" button. Bhadania also provided a regenerated representation of the button and its surrounding text. PMC points to this image and argues that Daschbach affirmatively assented to the arbitration agreement by clicking the button, as it was located directly below a "conspicuous and clear" notice stating, "I understand and agree to the Terms which include[] mandatory arbitration . . . ."[32] Daschbach does not dispute Bhadania's rendering of the "Submit" button and its surrounding text. Instead, Daschbach asserts in a declaration that he never visited the Jobs Website or authorized anyone to do so on his behalf, adding that he earned his law degree in 1962, has been a member of the District of Columbia Bar since 1966, and is not seeking a job. Separately, Daschbach argues that the Website did not provide adequate notification of, or properly obtain assent to, its terms, including the arbitration agreement.

Under § 4 of the FAA, "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." The First Circuit Court of Appeals has clarified that a trial under § 4 is "required only if there is a genuine issue of material fact for which a hearing would be necessary." Marks 3 Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15 (1st Cir. 2006) (citing Am. Int'l Specialty Lines Ins. Corp., 347 F.3d 665, 671 (7th Cir. 2003). In this case, a material factual dispute exists as to whether Daschbach or

---

[32] Bhadania Affidavit 1 (doc. no. 12-3) at ¶ 8.

someone acting on his behalf visited the Jobs Website and clicked the "Submit" button. Daschbach avers that the presence of his information in Fluent's records "does not guarantee that [Daschbach] visited the [W]ebsite and entered the information."[33] As presented in his declaration, Daschbach categorically denies visiting the Website, and he contends that he has no reason to visit the Website since he is not seeking employment. Contrary to PMC's contention, Daschbach does not "generally den[y] the facts upon which the right to arbitration rests;" rather, Daschbach has "identif[ied] specific evidence in the record demonstrating a material factual dispute for trial." Soto, 642 F.3d at 72 n.2 (quoting Tinder, 305 F.3d at 735). Accordingly, and by the agreement of counsel, the court will conduct an evidentiary hearing to determine whether Daschbach or someone acting on his behalf visited the Jobs Website and clicked the "Submit" button. After resolving the factual dispute, the court will consider whether these actions are sufficient to form an arbitration agreement.

### IV.     Conclusion

For the foregoing reasons, the Motion to Dismiss for Lack of Personal Jurisdiction[34] is GRANTED as to Person's claim and DENIED without prejudice as to the claims of out-of-state, putative class members. The Motion to Compel Arbitration and Dismiss Complaint[35] will be decided after an evidentiary hearing on the relevant, material factual dispute.

---

[33] Pls.' Opp'n (doc. no. 14) at 9.

[34] Doc. no. 12.

[35] Id.

**SO ORDERED.**

/s/ Joseph N. Laplante
Joseph N. Laplante
United States District Judge

Dated: March 26, 2021

cc: Patrick H. Peluso, Esq.
     Taylor True Smith, Esq.
     V. Richards Ward, Jr., Esq.
     Jeffrey A. Backman, Esq.
     Roy Taub, Esq.
     Steven J. Dutton, Esq.